**E-Filed 9/20/2011**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| JONATHAN C. KALTWASSER,<br><br>                              Plaintiff,<br><br>         v.<br><br>AT&T MOBILITY LLC, a Delaware Corporation,<br>f/k/a CINGULAR WIRELESS LLC,<br><br>                              Defendant. | Case Number C 07-00411<br><br>ORDER GRANTING MOTION TO<br>COMPEL ARBITRATION AND<br>TERMINATING MOTION TO<br>STRIKE CLASS ALLEGATIONS |

In January 2007, Plaintiff Jonathan C. Kaltwasser filed this putative class action alleging claims under California law against AT&T Mobility LLC, f/k/a Cingular Wireless LLC ("ATTM"). ATTM moved to compel arbitration of Kaltwasser's claims. Relying upon *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (Cal. 2005), this Court found the contractual arbitration agreement unenforceable, and that determination was affirmed by the Court of Appeals. *See Kaltwasser v. Cingular Wireless LLC*, 350 F. App'x 108, 109 (9th Cir. 2008). The Court subsequently deferred a decision on Kaltwasser's motion for class certification pending the United States Supreme Court's ruling in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). In a decision issued on April 27, 2011, the Supreme Court held that California's *Discover Bank* rule impermissibly conflicted with the Federal Arbitration Act. *See Concepcion*,

1    131 S. Ct. at 1748 (citing 9 U.S.C. §§ 2-4).  ATTM therefore renewed its motion to compel

2    arbitration and moved to strike Kaltwasser's class allegations.  For the reasons discussed below,

3    the motion to compel will be granted, and the motion to strike will be terminated as moot.

4                                      **I. BACKGROUND**

5           In July 2006, Kaltwasser, who then resided in California, renewed his wireless telephone

6    contract with ATTM, a Delaware corporation with its principal place of business in Atlanta,

7    Georgia.  Kaltwasser claims that he decided to renew because ATTM advertised that it was the

8    cellular service provider with the "fewest dropped calls."  Kaltwasser's complaint in the present

9    action alleges that ATTM's advertising was false, giving rise to claims for (1) unfair competition

10   under Cal. Bus. & Prof. Code §§ 17200 *et seq*., (2) false advertising under Cal. Bus. & Prof.

11   Code §§ 17500 *et seq*., (3) a violation of the Consumer Legal Remedies Act, Cal. Civ. Code

12   §§ 1750 *et seq*., and (4) breach of contract, or, alternatively, unjust enrichment.  He asserts his

13   claims on behalf of all customers who contracted for cell phone service with ATTM in California

14   on or after March 1, 2006.

15          ATTM moved to compel Kaltwasser to arbitrate his claims on an individual basis, citing

16   the terms of an arbitration agreement that it began including in its Terms of Service in December

17   2006 ("the 2006 agreement").  Kaltwasser argued that he never accepted the 2006 agreement and

18   that ATTM's previous arbitration agreement, which ATTM used from 2003 to December 2006

19   ("the 2003 agreement"), applied to him.  However, although the 2003 agreement and 2006

20   agreement differ in some respects, both are take-it-or-leave-it form contracts that preclude

21   ATTM's customers from bringing any "purported class or representative proceeding."[1]

22          On April 11, 2008, this Court denied ATTM's motion to compel.  It observed that under

23

24          [1] The 2003 agreement states: "YOU AND CINGULAR MAY BRING CLAIMS
     AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, and not as a
25   plaintiff or class member in any purported class or representative proceeding."  Dkt. 62 at 2.
          The 2006 agreement states: "YOU AND CINGULAR AGREE THAT EACH MAY
26   BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL
     CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED
27   CLASS OR REPRESENTATIVE PROCEEDING."  Dkt. 28-1 at 31.

28

                                              2

1   California law as articulated by the California Supreme Court in *Discover Bank*, consumer

2   contracts binding parties to bilateral arbitration "are generally unconscionable."  In particular,

3   *Discover Bank* held that a class-action waiver is unconscionable when it appears "in a consumer

4   contract of adhesion in a setting in which disputes between the contracting parties predictably

5   involve small amounts of damages, and when it is alleged that the party with the superior

6   bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out

7   of individually small sums of money."  36 Cal. 4th at 162-63.  The Court reasoned that because

8   "damages in consumer cases are often small . . . the class action is often the only effective way to

9   halt and redress [consumer] exploitation."  *Id.* at 161 (internal quotation marks and citation

10  omitted).  Conversely, bilateral arbitration agreements in consumer contracts typically "become[]

11  in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to

12  the person or property of another,'" making them "unconscionable under California law."  *Id.* at

13  163 (quoting Cal. Civ. Code § 1668).  In its order affirming this Court's decision, the Ninth

14  Circuit explained that "it makes no difference" whether the 2003 agreement or the 2006

15  agreement applies to Kaltwasser because both "include a waiver of the right to bring a class

16  action that is unconscionable as a matter of California law."  *See Kaltwasser*, 350 F. App'x at

17  109 (citing *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976, 981 (9th Cir. 2007);

18  *Discover Bank*, 36 Cal. 4th at 161).

19      The parties proceeded with discovery, and Kaltwasser retained an expert to analyze the

20  data that ATTM produced as support for its "fewest dropped calls" advertisements.  On February

21  26, 2010, Kaltwasser filed a motion to certify the proposed plaintiff class.

22                                  **II. LEGAL STANDARD**

23      Section 4 of the FAA permits a "party aggrieved by the alleged failure, neglect, or refusal

24  of another to arbitrate under a written agreement for arbitration [to] petition any United States

25  district court . . . for an order directing that . . . arbitration proceed in the manner provided for in

26  [the arbitration] agreement."  9 U.S.C. § 4.  Upon a showing that a party has failed to comply

27  with a valid arbitration agreement, the district court must issue an order compelling arbitration.

28

Case No. C 07-411
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND TERMINATING MOTION TO STRIKE CLASS
ALLEGATIONS
(JFLC3)

1    *Id.*

2         The FAA espouses a general policy favoring arbitration agreements. *Moses H. Cone*

3    *Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Hall Street Assoc.,*

4    *L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). Federal courts are required to rigorously

5    enforce an agreement to arbitrate. *See Hall Street Assoc.*, 552 U.S. at 582. In determining

6    whether to issue an order compelling arbitration, the court may not review the merits of the

7    dispute but must limit its inquiry to (1) whether the contract containing the arbitration agreement

8    evidences a transaction involving interstate commerce, (2) whether there exists a valid

9    agreement to arbitrate, and (3) whether the dispute(s) fall within the scope of the agreement to

10   arbitrate. *See Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477-78 (9th Cir.1991),

11   *cert denied*, 503 U.S. 919 (1992). If the answer to each of these queries is affirmative, then the

12   court must order the parties to arbitration in accordance with the terms of their agreement. 9

13   U.S.C. § 4.

14        The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and

15   enforceable, save upon such grounds as exist at law or in equity for the revocation of any

16   contract." 9 U.S.C. § 2. "Thus, generally applicable contract defenses, such as fraud, duress, or

17   unconscionability, may be applied to invalidate arbitration agreements without contravening"

18   federal law. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). In interpreting the

19   validity and scope of an arbitration agreement, the courts apply state law principles of contract

20   formation and interpretation. *See id.* at 686-87; *see also Wolsey, Ltd. v. Foodmaker, Inc.*, 144

21   F.3d 1205, 1210 (9th Cir. 1998). Accordingly, a court reviews a plaintiff's arbitration agreement

22   in light of the "liberal federal policy favoring arbitration agreements," *Moses H. Cone*, 460 U.S.

23   at 24, and considers the enforceability according to the laws of the state of contract formation,

24   *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Ingle v. Circuit City*

25   *Stores*, 328 F.3d 1165, 1170 (9th Cir. 2003).

26   ### III. DISCUSSION

27        In *Concepcion*, the Supreme Court considered whether the *Discover Bank* rule came

28

Case No. C 07-411
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND TERMINATING MOTION TO STRIKE CLASS
ALLEGATIONS
(JFLC3)

1  within the "savings clause" of Section 2 of the FAA, which provides that a court may find an

2  arbitration agreement unenforceable "upon such grounds as exist at law or in equity for the

3  revocation of any contract." *See Concepcion*, 131 S. Ct. at 1745-48 (citing 9 U.S.C. § 2).  The

4  Court held that it did not.  It concluded that although the *Discover Bank* rule was characterized

5  as arising from the "generally applicable" contract law doctrine of unconscionability, it was

6  "applied in a fashion that disfavors arbitration," as "California's courts have been more likely to

7  hold contracts to arbitrate unconscionable than other contracts." *Id.* at 1747.  The FAA "was

8  designed to promote arbitration," which typically has the objective of "achiev[ing] 'streamlined

9  proceedings and expeditious results.'" *Id.* at 1749 (quoting *Preston v. Ferrer*, 552 U.S. 346, 357-

10  58 (2008)).  The *Discover Bank* rule "interferes with arbitration": by enabling a consumer who

11  has agreed to bilateral arbitration to "demand [classwide arbitration] *ex post,*" it subjects the

12  parties to "'fundamental'" changes in the arbitration process. *Id.* at 1750 (quoting *Stolt-Nielsen*

13  *S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1776 (2010)).  The "switch from bilateral to

14  class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the

15  process slower, more costly, and more likely to generate procedural morass than final judgment."

16  *Id.* at 1751.  Class arbitration, unlike bilateral arbitration, "*requires* procedural formality" and

17  due process safeguards that might entail increased judicial intervention. *See id.* at 1751-52

18  (emphasis in the original).  Class arbitration also "greatly increases risks to defendants" because

19  it can impose "devastating loss[es]" with very limited judicial review. *Id* at 1752.  Concluding

20  that class arbitration "is not arbitration as envisioned by the FAA," the Court held that

21  "California's *Discover Bank* rule is preempted by the FAA." *Id.* at 1753.

22      Kaltwasser nonetheless argues that *Concepcion* does not require him to arbitrate his

23  action against ATTM.  First, he contends that *Concepcion* left intact a vindication-of-rights

24  doctrine under federal common law, which allows him to avoid bilateral arbitration if he can

25  show that the costs involved in proving his claims exceed the damages he can potentially

26  recover.  Second, he asserts that *Concepcion* did not affect public policy principles of contract

27  law expressed in *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066 (Cal. 1999), *Cruz v.*

28

Case No. C 07-411
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND TERMINATING MOTION TO STRIKE CLASS ALLEGATIONS
(JFLC3)

1   *PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303 (Cal. 2003), and Cal. Civ. Code § 3513 (2011),

2   which provides that "a law established for a public reason cannot be contravened by a private

3   agreement."[2]  Third, he argues that ATTM has waived its right to bilateral arbitration.  Each of

4   these arguments is unavailing.

5   **A.  Vindication-of-Rights Doctrine**

6          As Kaltwasser reads it, *Concepcion* invalidated the *Discover Bank* rule because the rule

7   operated too broadly, invalidating most consumer arbitration agreements and having no real

8   limiting principles.  *See* 131 S. Ct. at 1750 ("The rule is limited to adhesion contracts, but the

9   times in which consumer contracts were anything other than adhesive are long past.  The rule

10  also requires that damages be predictably small, and that the consumer allege a scheme to cheat

11  customers.  The former requirement, however, is toothless and malleable . . . , and the latter has

12  no limiting effect, as all that is required is an allegation.") (internal citations omitted).  He

13  suggests that *Concepcion* leaves room for a court to perform an "individualized case-by-case"

14  analysis of whether binding a particular plaintiff to bilateral arbitration would preclude that

15  plaintiff from vindicating his rights, and that in such a case the plaintiff should not be bound by

16  the arbitration agreement.  Kaltwasser's Response Br. at 9.  Kaltwasser asserts that the costs of

17  proving his claims in this case make it impossible for him to vindicate his claims through

18  individual arbitration.  He represents that he has spent $65,000 on expert fees and that his expert

19  estimates that a full statistical analysis will cost at least $165,000.  In contrast, Kaltwasser's

20  actual damages will not exceed $2,000, which represents the total of his contract payments to

21  ATTM.

22         Kaltwasser bases his vindication-of-rights argument on *Green Tree Financial*

23  *Corporation-Alabama v. Randolph*, 531 U.S. 79 (2000).  In that case, the plaintiff brought

24  federal statutory claims against a financing company and its subsidiary (collectively, "Green

25  Tree").  *Id.* at 82-83.  Green Tree moved to compel arbitration pursuant to a contract between the

26

27         [2]  Kaltwasser erroneously cites Cal. Civ. Code § 3515 for this proposition, but it is in fact
    stated at Cal. Civ. Code § 3513.

28

Case No. C 07-411
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND TERMINATING MOTION TO STRIKE CLASS
ALLEGATIONS
(JFLC3)

1   parties, but the plaintiff sought to invalidate the arbitration provision on the ground that the

2   "arbitration agreement's silence with respect to costs and fees creates a 'risk' that she will be

3   required to bear prohibitive arbitration costs if she pursues her claims in an arbitral forum, and

4   thereby forces her to forgo any claims she may have against" Green Tree.  *Id.* at 90.  The

5   Supreme Court held that when "a party seeks to invalidate an arbitration agreement on the

6   ground that arbitration would be prohibitively expensive, that party bears the burden of showing

7   the likelihood of incurring such costs."  *Id.* at 92.  It concluded that the plaintiff in *Green Tree*

8   fell far short of meeting that burden.  She made conclusory statements about filing and

9   arbitrator's fees, but she offered nothing to show that she herself would "bear such costs if she

10  [went] to arbitration."  *See id.* at 90-91 & n.6.  Without more, the plaintiff's concern about the

11  expense of arbitrating was "too speculative to justify the invalidation of an arbitration

12  agreement."  *Id.* at 91.

13          Kaltwasser seizes on the Court's statement in *Green Tree* that "[i]t may well be that the

14  existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her

15  federal statutory rights in the arbitral forum."  *Id.* at 90.  He asserts that if a litigant *can* prove

16  that the cost of arbitrating would prevent him from vindicating his rights, the arbitration

17  agreement may be held invalid.  He points out that in *In re American Express Merchants'*

18  *Litigation*, 634 F.3d 187, 197-99 (2d Cir. 2011), the Second Circuit recently applied *Green Tree*

19  to invalidate a class-action waiver in an arbitration agreement on these very grounds.  The

20  plaintiffs in *American Express* submitted an affidavit from an economist who estimated that the

21  cost of analyzing their Sherman Act claims would cost "in the middle of" the typical range for an

22  antitrust case, $300,000 to $2 million.  *Id.* at 198. The largest amount that any of the named

23  plaintiffs could expect to win was approximately $39,000.  *Id.*  Based upon this showing, the

24  Second Circuit concluded that "the cost of plaintiffs' individually arbitrating their dispute with

25  Amex would be prohibitive, effectively depriving plaintiffs of the statutory protections of the

26  antitrust laws."  *Id.* at 197-98.  Finding that the plaintiffs' "only economically feasible means for

27  enforcing their statutory rights is via a class action," the Second Circuit refused to enforce the

28

7

1   class-action waiver.  *Id.* at 198.

2        There are several problems with Kaltwasser's reliance on *Green Tree*.  First, it is not

3   clear that *Green Tree's* solicitude for the vindication of rights applies to rights arising under state

4   law, which are the only rights that Kalwasser seeks to vindicate here.  *Green Tree* refers

5   expressly to the possibility that arbitration costs could "preclude a litigant . . . from effectively

6   vindicating her *federal* statutory rights," 531 U.S. at 90 (emphasis added), and it states that "the

7   party seeking to avoid arbitration bears the burden of establishing that *Congress* intended to

8   preclude arbitration of the statutory claims at issue," *id.* at 92 (emphasis added).  *But compare*

9   *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 346 (6th Cir. 2006) (stating that vindication-of-

10  rights principle based on *Green Tree* applies only "where federal statutorily provided rights are

11  affected") *with Kristian v. Comcast Corp.*, 446 F.3d 25, 29 (1st Cir. 2006) (finding "provisions

12  of . . . arbitration agreements . . . invalid because they prevent the vindication of statutory rights

13  under state and federal law").  Because *American Express* involved only federal claims, it does

14  not help Kaltwasser in this regard.

15       Second, even assuming that *Green Tree* applies to state law claims, the notion that

16  arbitration must never prevent a plaintiff from vindicating a claim is inconsistent with

17  *Concepcion*.  In striking down the *Discover Bank* rule, the Supreme Court recognized the

18  possibility that "small-dollar claims . . . might . . . slip through the system" because of the cost of

19  proving a claim. 131 S. Ct. at 1753.  The *Concepcion* dissent found this consequence greatly

20  troubling.  *See id.* at 1760 ("[A]greements that forbid the consolidation of claims can lead small-

21  dollar claimants to abandon their claims rather than to litigate."); *id.* at 1761 ("The *realistic*

22  alternative to a class action is not 17 million individual suits, but zero individual suits, as only a

23  lunatic or fanatic sues for $30." (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661

24  (7th Cir. 2004)) (emphasis in the original)).  If the *Concepcion* majority had intended to allow

25  for the plaintiffs to avoid class-action waivers by offering evidence about particular costs of

26  proof they would face—essentially applying the underlying rationale of *Discover Bank* without

27  relying on *Discover Bank* as a "rule"—one would expect it to have drawn attention to such a

28

8

significant point in response to the dissent.  *American Express* was decided prior to *Concepcion*, and in fact, the Second Circuit has stayed proceedings in that case while it "sua sponte consider[s] rehearing" in light of *Concepcion*.  *See* Order, *In re American Express Merchants' Litigation*, No. 06-1871-cv (2d Cir. Aug. 1, 2011); *see also D'Antuono v. Service Road Corp*, No. 3:11cv33 (MRK), ___ F. Supp. 2d ___, 2011 WL 2175932, at \*29 (D. Conn May 25, 2011) (expressing "some doubt about *American Express* . . . in light of *AT & T Mobility* [*v. Concepcion*]" although concluding that district courts in the Second Circuit "remain[] obligated to apply *American Express.*").

Third, Kaltwasser's position is unworkable as a practical matter of judicial administration.  Under his approach, every court evaluating a motion to compel arbitration would have to make a fact-specific comparison of the potential value of a plaintiff's award with the potential cost of proving the plaintiff's case.  Defendants predictably will challenge the qualifications and methodology of experts who are called upon to estimate a plaintiff's costs of proof.  It is highly doubtful that in striking down the *Discover Bank* rule, the Supreme Court intended to open the door to such proceedings as a means for plaintiffs to avoid arbitration agreements.

For these reasons, it is incorrect to read *Concepcion* as allowing plaintiffs to avoid arbitration agreements on a case-by-case basis simply by providing individualized evidence about the costs and benefits at stake.  *Concepcion* not only rejected the *Discover Bank* rule but also upheld the 2006 agreement at issue in that case.  *Cf. Cruz v. Cingular Wireless, LLC*, No. 08-16080, ___ F.3d ___, 2011 WL 3505016, at \*8 (11th Cir. Aug. 11, 2011) (interpreting *Concepcion* to validate the 2006 agreement, although without "reach[ing] the question of whether *Concepcion* leaves open the possibility that in [other] cases, an arbitration agreement may be invalidated . . . where it effectively prevents the claimant from vindicating her statutory cause of action").  And if the 2006 agreement is valid, then so is the 2003 agreement, which does

1   not differ materially from the former.[3]

2        To be sure, *Concepcion* does not explicitly overrule *Green Tree*, but it does make it

3   untenable to read *Green Tree* for a vindication-of-rights principle as robust as Kaltwasser asserts

4   here.  If *Green Tree* has any continuing applicability, it must be confined to circumstances in

5   which a plaintiff argues that costs specific to the arbitration process, such as filing fees and

6   arbitrator's fees, prevent her from vindicating her claims.  *See Green Tree*, 531 U.S. at 90-91 &

7   n.6.  *Concepcion* forecloses plaintiffs from objecting to class-action waivers in arbitration

8   agreements on the basis that the potential cost of proving a claim exceed potential individual

9   damages.

10       **B.  *Broughton*, *Cruz*, and California Civil Code § 3513**

11       Kaltwasser's next objection to the arbitration agreement is based upon the fact that he

13  ────────────────

14  [3]  Admittedly, the 2003 agreement is less favorable to the consumer.  It provides that if "the arbitrator grants relief to [the consumer] that is equal to or greater than the value of [his] Demand"—the specific amount of relief he must request when initiating a claim against ATTM—ATTM will reimburse him for "reasonable attorneys' fees and expenses incurred for the arbitration."  Dkt. 41-1 at 17.  The 2006 agreement replaces this provision with one that obliges ATTM to pay at least the greater of $5000 or the maximum available in the local small claims court, along with twice the amount of attorney's fees and expenses, whenever a consumer obtains an arbitration award greater than ATTM's last settlement offer before selection of an arbitrator.  *See* Dkt. 41-2 at 4-5; *Concepcion*, 131 S. Ct. at 1753.

19  However, Kaltwasser's objections to the 2003 agreement apply equally to the 2006 agreement.  Kaltwasser argues that the expenses-and-fees guarantee in the 2003 agreement is "illusory" because there is information asymmetry between the consumer and ATTM.  Kaltwasser Response Br. at 21.  He claims that the consumer, without any discovery, has little means of identifying the appropriate amount for his demand.  If he guesses too low, ATTM can simply pay the demand, undervaluing the claim.  If he guesses too high, ATTM can refuse to pay the demand, wait for the arbitrator to award a lower amount, and avoid paying fees and expenses.  To the extent that this situation poses a real difficulty for plaintiffs, it does not get any better with the 2006 agreement, under which the recovery of expenses and fees also depends on the parties' pre-arbitration estimates of the value of the claim.  Kaltwasser agrees.  *See id.* at 23-24 (arguing that recovery of expenses and fees under the 2006 agreement "remains dependent upon a consumer's ability to determine *prior to discovery* what is the actual value of his or her claim . . . . While more artfully crafted, this provision is still substantively illusory." (emphasis in original)).  *Concepcion* did not find the conditions for obtaining expenses and fees in the 2006 agreement problematic, *see* 131 S. Ct. at 1753, so they also fail to provide a basis for avoiding the 2003 agreement.

Case No. C 07-411
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND TERMINATING MOTION TO STRIKE CLASS
ALLEGATIONS
(JFLC3)

1   seeks injunctive relief for his claims under California's Unfair Competition Law ("UCL"), Cal.

2   Bus. & Prof. Code § 17200 *et seq.*; False Advertising Law ("FAL"), Cal. Bus. & Prof. Code

3   § 17500 *et seq.*; and Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*

4   The California Supreme Court has held that claims for injunctive relief under these laws are not

5   arbitrable.  In *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066 (Cal. 1999), it held that claims

6   for injunctive relief under the CLRA may not be arbitrated because the purpose of such relief is

7   to "remedy a public wrong," *id.* at 1080, and "the judicial forum has significant institutional

8   advantages over arbitration in administering a public injunctive remedy, which as a consequence

9   will likely lead to the diminution or frustration of the public benefit if the remedy is entrusted to

10   arbitrators," *id.* at 1082.  In *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 307 (Cal.

11   2003), the California Supreme Court re-affirmed *Broughton* and extended its holding to

12   encompass claims for injunctive relief under the UCL and FAL.

13       Since *Concepcion*, numerous courts have concluded that the FAA preempts the holdings

14   of *Cruz* and *Broughton* because they amount to "state law[s] prohibit[ing] outright the arbitration

15   of a particular type of claim."  *See, e.g.*, *Nelson v. AT&T Mobility LLC*, No. C10-4802 TEH,

16   2011 WL 3651153, at *2 (N.D. Cal. Aug. 18, 2011); *In re Apple and AT&T iPad Unlimited Data

17   Plan Litigation*, No. C-10-02553 RMW, 2011 WL 2886407, at *4 (N.D. Cal. July 19, 2011);

18   *Arellano v. T-Mobile USA, Inc.*, No. C 10-05663 WHA, 2011 WL 1842712, at *2 (N.D. Cal.

19   May 16, 2011) (all quoting *Concepcion*, 131 S. Ct. at 1747).  Kaltwasser nonetheless contends

20   that *Cruz* and *Broughton* are not preempted because the statutes that they examine, the UCL,

21   FAL, and CLRA, do not prohibit arbitration on their face.  He asserts that *Cruz* and *Broughton*

22   both rest upon a public interest analysis akin to that expressed in Cal. Civ. Code § 3513, which

23   states that "a law established for a public reason cannot be contravened by a private agreement."

24   According to Kaltwasser, Cal. Civ. Code § 3513 and the similar public interest rationales

25   expressed in *Cruz* and *Broughton*, are "generally applicable" contract law principles that come

26   within the savings clause of Section 2 of the FAA and remain valid after *Concepcion*.

27       This argument is unpersuasive.  *Discover Bank* itself was based upon public policy

28

1   rationales intertwined with the generally applicable doctrine of unconscionability.  It invoked

2   Cal. Civ. Code § 1668, which provides that "All contracts which have for their object . . . to

3   exempt anyone from responsibility for his own . . . violation of law, whether willful or negligent,

4   are against the policy of the law."  *See Discover Bank*, 36 Cal. 4th at 161, 163.  The Supreme

5   Court, however, found that *Discover Bank* applied the unconscionability doctrine "in a fashion

6   that disfavors arbitration."  *Concepcion*, 131 S. Ct. at 1747.  *Cruz* and *Broughton,* even more

7   patently than *Discover Bank*, apply public policy contract principles to disfavor and indeed

8   prohibit arbitration of entire categories of claims.

9           **C. Waiver of Rights**

10          "The right to arbitration, like any other contract right, can be waived."  *United States v.

11  Park Place Assocs.*, 563 F.3d 907, 921 (9th Cir. 2009).  The Ninth Circuit has emphasized,

12  however, that "waiver of the right to arbitration is disfavored because it is a contractual right,

13  and thus any party arguing waiver of arbitration bears a heavy burden of proof."  *Id.* (internal

14  quotation marks and citations omitted).  To demonstrate that ATTM has waived its right to

15  arbitrate, Kaltwasser must show: "(1) knowledge of an existing right to compel arbitration; (2)

16  acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration

17  resulting from such inconsistent acts."  *Id.* (internal quotation marks and citation omitted).

18          Kaltwasser fails to meet the first requirement.  The Ninth Circuit has held that "there was

19  no existing right to arbitrate" if it would have been "futile" to pursue arbitration "under the then-

20  prevailing law in this circuit."  *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1187 (9th

21  Cir. 1986).  Before *Concepcion*, adhesive consumer contracts requiring bilateral agreement were

22  generally invalid under *Discover Bank*, so it was "futile" for ATTM to pursue arbitration against

23  Kaltwasser.  *See Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 695 (9th Cir. 1986) (finding

24  that it was "futile [for defendant] to file a motion to compel arbitration until . . . the Supreme

25  Court rejected" a Ninth Circuit ruling that had been applicable to the defendant's case); *see also,

26  e.g., Morse v. ServiceMaster Global Holdings Inc.*, No. C 10-00628 SI, 2011 WL 3203919, at *3

27  (N.D. Cal. July 27, 2011) (finding that defendants who did not move to compel arbitration prior

28

to *Concepcion* "did not act inconsistently with a known existing right to compel arbitration"); *Bryant v. Service Corp. Int'l*, No. C 08-1190 SI, 2011 WL 2709643, at *5 (N.D. Cal. July 12, 2011) ("The arbitration agreement that plaintiffs are seeking to enforce in this case appears not to permit class action arbitration, and therefore until [*Concepcion*] would not have been enforceable according to its terms."); *In re Cal. Title Ins. Antitrust Litigation*, No. 08-01341 JSW, 2011 WL 2566449, at *3 (N.D. Cal. June 27, 2011) (finding that it would have "been futile for Defendants . . . to compel arbitration prior to the decision in *Concepcion*").

Because ATTM did not have a right to compel arbitration before *Concepcion*, and it promptly moved to compel arbitration after the Supreme Court decided *Concepcion*, it did not waive or abandon its right to arbitration.

## IV.  ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that ATTM's motion to compel arbitration is GRANTED.  ATTM's motion to strike Kaltwasser's class allegations is terminated without prejudice as moot.

IT IS SO ORDERED.

DATED: September 20, 2011

_____
JEREMY FOGEL
United States District Judge

Case No. C 07-411
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND TERMINATING MOTION TO STRIKE CLASS ALLEGATIONS
(JFLC3)